Appeal by the State from a judgment of the Court of Claims in the amount of $13,102.77 for damages for breach of a contract between the claimant and the State of New York. After the appeal was heard, a reargument upon the question of damage was had pursuant to our direction. (4 A D 2d 981.) On October 10, 1951, the claimant and the State entered into a contract for the improvement of the grounds at the Potsdam State Teachers College. The work consisted of excavation, a small amount of sewer work, grading and seeding, the placing of sidewalks and roadways and the planting of shrubbery. The contract provided for completion of the work within 120 days from the date of execution, which would be February 7, 1952. However, the specifications provided that grass seed was to be sown from March 15 to May 1, or from August 15 to October 1 and that the shrubs were to be planted in good planting weather between September 1 and May 15. The contract provided that the State reserved the right to let other contracts in connection with the work and required the contractor to co-ordinate his work with that of other contractors. It further provided that, if the contractor was delayed in his work by any act or neglect of the State, the “time of completion shall be extended” but that “No charges or claim for damages shall be made by the Contractor for any delays *920 or hindrances, from any cause whatsoever.” Very little of the work was done by February 7, 1952, chiefly because of the unavailability of materials. Shortly thereafter, other contractors began to work in the area and the claimant’s work was seriously delayed. In May of 1952, over the protest of the claimant, the State opened the roadway on which the claimant was working to traffic for the use of other contractors and the institution itself. The claimant testified that, if it had not been for the delay caused by this interference, the contract could have been completed by July, 1952, except for the seeding and planting which could not be done until August and September. As a result of the delay, the roadway portion of the job was not completed until about August 7, 1952. Thereafter, the State caused further interference with the claimant’s doing the seeding and planting work and he had to move his men and equipment back to his headquarters in Norwich, New York, because the season for the performance of that type of work had expired. The equipment was moved back to Potsdam in 1953 and the claimant completed this portion of his work in the fall of 1953. The Court of Claims gave the claimant a judgment for the damage alleged to have been caused by these delays. The State argues, first, that no allowance can be made for the roadway delay because the roadway would have been completed prior to the occurrence of the events which caused the delay, if the claimant had performed his contract within the time stipulated therein. The Court of Claims properly rejected this argument. The contract completion date obviously could not be applied literally to the whole contract. The State would rewrite the provision to make the 120 days applicable to the roadway portion but there is no authority for this; the preferable view is that the completion date was left indefinite and that performance was therefore to be completed in a reasonable time. In any event, the record established that the State acquiesced in the performance of the work beyond the 120-day period. Next, the State argues that the clause forbidding any claim for damages for delay is a bar to the claim but it has been held that such clause does not bar a claim for damages due to the State’s aetive and direct interference with the performance of the work (Wright & Kremers v. State of New York, 263 N. Y. 615, modfg. 238 App. Div. 260; Waples Co. v. State of New York, 178 App. Div. 357). The evidence supports a finding of such interference. As the Court of Claims found, the extra work and cost to which the claimant was subjected by reason of the State’s action went far “beyond the co-operation required of claimant under the terms of the contract”. The principal item of damage to which we directed counsel’s attention on the reargument was that of $7,248.04 awarded for the increased cost of completing the roadway due to interference by the State. It was properly found that this work was thereby delayed and its cost increased. Claimant’s supervisor testified, without objection or contradiction, to delay of 120 hours and to the rental values of various pieces of equipment upon the site for use in the work. If this testimony was erroneous in any respect, it would seem that the State’s vast engineering and construction experience would have afforded ready means of contradiction. There was neither contradiction of the testimony, however, nor any objection to the theory or measure of damage. Upon appeal, however, the Attorney-General stresses the contents of certain worksheets which were received upon the express limitation suggested by counsel for the State that they were “ offered to show the number of men on the job each day and the number of hours and equipment used on the job that day”. (Emphasis supplied.) The State now points to the number of hours use recorded for the equipment as less than the 120 hours testified to and inferentially found by the court in accepting claimant’s *921 computation in toto. The State’s argument ignores any element of damage for the reasonable rental value or deprivation of use of equipment which was idle by reason of the interference and delay. The State calls attention, also, to monetary figures referable to the hourly use of the various pieces of equipment and which are, in every instance, very considerably lower than the rental values proven. There is no indication whatsoever in the record as to the meaning, purpose or significance of these figures. Upon the reargument, claimant’s counsel suggested that the figures represented costs of hourly operation, recorded for cost-accounting purposes. Upon this appeal and under the theory upon which the case was tried by both parties, they are not material in any event since it is clear that they do not represent rental values. The worksheets might well have served as a basis for cross-examination, which might or might not have evoked an explanation. "We may not remit merely to enable counsel to attempt a new approach or a different trial technique. The item of $7,248.04 damage must, however, be reduced (by the amount of the conceded error in the supervisor’s compensation and by a corresponding reduction in the items of taxes and insurance, overhead and profit) to $7,125.97. The item of $816 damage for additional gravel must be reduced to $193.59, representing the difference, at $3 per cubic yard, between 1,284.2 cubic yards of compacted gravel invoiced for the entire job and 1,219.67 cubic yards allowed and paid for. We find no other error. Judgment modified by reducing the amount of the award for damages to $11,332.59 and interest, and, as so modified, affirmed, without eosts. Settle order.
Foster, P. J., Bergan, Coon and Gibson, JJ., concur.